Citation Nr: 1617289 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 10-06 071 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Whether new and material evidence has been received to reopen a claim of service connection for a left ankle disability. 

2. Entitlement to service connection for a left knee disability. 

3. Entitlement to service connection for a right knee disability. 

4. Entitlement to service connection for a lung disability. 

5. Entitlement to service connection for a right shoulder disability. 

6. Entitlement to service connection for a right hip disability. 

7. Entitlement to a rating in excess of 10 percent for evulsion fracture of the left hip. 

8. Entitlement to a rating in excess of 10 percent prior to February 9, 2012 for degenerative disc disease of the lumbosacral spine with lumbar strain. 
9. Entitlement to a rating in excess of 20 percent since February 9, 2012 for degenerative disc disease of the lumbosacral spine with lumbar strain. 

10. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) prior to September 3, 2015. 


WITNESSES AT HEARING ON APPEAL

Appellant & Spouse 


ATTORNEY FOR THE BOARD

Jarrette A. Marley, Counsel


INTRODUCTION

The Veteran had active service from July 1981 to July 1984 and from July 1985 to May 1993, including service in the Southwest Asia theater of operations from October 1990 to April 1991. 

These matters are before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision by the Winston-Salem, North Carolina Department of Veterans Affairs (VA) Regional Office (RO) that, in part, granted an increased 10 percent rating for the Veteran's service-connected left hip disability, effective December 14, 2007 (date of claim). These matters were previously before the Board in August 2013 and June 2014 when they were remanded for additional development. 

During the pendency of this appeal, an October 2015 rating decision granted service connection for radiculopathy of the left lower extremity, rated 20 percent, effective September 3, 2015, and granted an increased (20 percent) rating for radiculopathy of the right lower extremity, effective September 3, 2015. Accordingly, the matter of entitlement to a TDIU rating has been recharacterized as entitlement to such benefit prior to September 3, 2015, at which point the Veteran has established a 100 percent schedular rating and entitlement to a TDIU rating is moot. 

The issues of entitlement to service connection for a left ankle disability, a lung disability, a left knee disability, a right knee disability, a right shoulder disability, a right hip disability, and entitlement to a TDIU rating, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's left hip disability is manifested by no more than flexion limited to 90 degrees, extension to 10 degrees, and adduction limited such that the Veteran cannot cross his legs, even with pain and functional loss considered; ankylosis of the hip, malunion or nonunion of the femur, and limitation of abduction to 10 degrees or less are not shown. 

2. Prior to February 9, 2012, the Veteran's service-connected degenerative disc disease of the lumbosacral spine with lumbar strain was not shown to have been manifested by forward flexion to 60 degrees or less, combined range of motion of the thoracolumbar spine to 120 degrees or less, muscle spasm or guarding severe enough to result in an abnormal gait or spinal contour, or ankylosis of the spine; separately ratable neurological symptoms attributable to the lumbosacral spine disability (other than the service-connected right lower extremity radiculopathy) are not shown. 

3. Since February 9, 2012, the Veteran's service-connected degenerative disc disease of the lumbosacral spine with lumbar strain is not shown to have been manifested by forward flexion to 30 degrees or less, or ankylosis of the spine; separately ratable neurological symptoms attributable to the lumbosacral spine disability (other than the service-connected right and left lower extremity radiculopathy) are not shown. 


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for the Veteran's left hip disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2015); 38 C.F.R. §§ 3.102, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5252, 5253 (2015). 

2. Prior to February 9, 2012, the criteria for a rating in excess of 10 percent for the Veteran's lumbosacral spine disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2015); 38 C.F.R. §§ 3.102, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015). 

3. Since February 9, 2012, the criteria for a rating in excess of 20 percent for the Veteran's lumbosacral spine disability have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2015); 38 C.F.R. §§ 3.102, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5237 (2015). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

A. Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). The VCAA applies to the instant claims. 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 484-86 (2006), aff'd Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

Regarding the increased rating claims for the left hip and lumbosacral spine, the notice requirements were accomplished in January 2008 and May 2009 letters. The January 2008 letter was provided before the initial April 2009 adjudication of the claims. The letters notified the Veteran of the information and evidence needed to substantiate his increased rating claims, and told that the evidence must show that his service-connected disabilities had gotten worse. The Board finds that the notification requirements have been satisfied as to both timing and content as to the Veteran's claims. The letters also provided notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded, in accordance with Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490-91 (2006); see also Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). The Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice. See Shinseki v. Sanders, 556 U.S. 396 (2009) (discussing the rule of prejudicial error). 

VA also has a duty to assist the Veteran in the development of his claims. The record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, post-service treatment records, and VA examination reports. The Veteran was afforded VA examinations regarding his left hip and lumbosacral spine in February 2009, February 2012, and September 2015. The Board finds the examinations to be adequate, cumulatively, because the examiners described his disabilities and associated symptoms in detail, and supported all conclusions with analysis based on objective testing and observations. See Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

The Board finds that the record as it stands includes adequate competent evidence to allow the Board to decide these matters, and that no further development of the evidentiary record is necessary. See generally 38 C.F.R. § 3.159(c)(4). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met.

B. Legal Criteria, Factual Background, and Analysis

Increased Rating Claims

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. The percentage ratings in VA's Schedule for Rating Disabilities (Rating Schedule) represent as far as can practicably be determined the average impairment in earning capacity resulting from such disabilities and their residual conditions in civil occupations. 38 C.F.R. § 4.1. 

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). The Court has clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). 

Instead, the Court in Mitchell explained that pursuant to 38 C.F.R. §§ 4.40 and 4.45, the possible manifestations of functional loss include decreased or abnormal excursion, strength, speed, coordination, or endurance, as well as less or more movement than is normal, weakened movement, excess fatigability, and pain on movement (as well as swelling, deformity, and atrophy) that affects stability, standing, and weight-bearing. See 38 C.F.R. §§ 4.40, 4.45. Thus, functional loss caused by pain must be rated at the same level as if the functional loss were caused by any of the other factors cited above. In evaluating the severity of a joint disability, VA must determine the overall functional impairment due to these factors. 

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability more closely approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. 

Where entitlement to compensation has already been established and increase in disability is at issue, the present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55 (1994). However, "staged" ratings are appropriate where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); see also Fenderson v. West, 12 Vet. App. 119 (1999). 

Left Hip Disability

Historically, an August 1993 rating decision granted service connection for evulsion fracture of the left hip, rated noncompensable, effective May 11, 1993 (day after separation from service). The instant claim for an increased rating was submitted on December 14, 2007. The April 2009 rating decision on appeal, in part, granted an increased (10 percent) rating for the Veteran's evulsion fracture of the left hip, effective December 14, 2007. 

The Veteran's left hip disability is rated under Diagnostic Codes 5299-5252 (analogous to limitation of flexion of the thigh). 

Diagnostic Code 5252 provides that a 10 percent disability rating is warranted for limitation of flexion of the thigh to 45 degrees; a 20 percent rating is warranted for limitation of flexion of the thigh to 30 degrees; a 30 percent rating is warranted for limitation of flexion of the thigh to 20 degrees; and a 40 percent rating is warranted for flexion of the thigh to 10 degrees. 38 C.F.R. § 4.71a. 

Diagnostic Code 5251 provides that a 10 percent disability rating is warranted for limitation of extension of the thigh to 5 degrees. Id. 

Normal range of motion of the hip are hip flexion from 0 to 125 degrees, and hip abduction from 0 to 45 degrees. 38 C.F.R. § 4.71, Plate II. 

On February 2009 VA examination, the Veteran complained of left hip pain. He denied use of assistive devices (e.g., crutches, cane), and denied episodes of dislocation or subluxation. The Veteran indicated he experiences flare-ups of his left hip only with increased activity. On physical examination, range of motion studies revealed left hip flexion to 90 degrees, abduction to 45 degrees, internal rotation to 30 degrees, external rotation to 60 degrees, and extension to 20 degrees. Repetitive range of motion testing did not alter range of motion findings. There was no objective evidence of painful motion, although discomfort was noted in the left hip at 90 degrees on flexion. There was no evidence of ankylosis. The diagnosis was old avulsion type fracture of the left hip, healed. 

On February 2012 VA examination, the Veteran reported intermittent left hip pain with stepping up and with cold or rainy weather. He indicated he experienced flare-ups of his left hip two to three times per week, lasting for hours, caused by standing, and alleviated by laying down. On physical examination, range of motion studies revealed left hip flexion to 100 degrees (without objective evidence of painful motion), and left hip extension to greater than 5 degrees (with no objective evidence of painful motion). Abduction was not lost beyond 10 degrees. In addition, adduction was not limited such that the Veteran could not cross his legs, and rotation was not limited such that the Veteran could not toe-out more than 15 degrees. Repetitive range of motion testing revealed no change in range of motion findings. There was no evidence of localized tenderness or pain to palpation for the joint/soft tissue of the left hip. Muscle strength testing of the left hip was normal (5/5) on flexion, abduction, and extension. There was no evidence of ankylosis. There was also no evidence of malunion or nonunion of the femur or flail hip joint. It was noted that the Veteran constantly used a cane for ambulation. 

On September 2015 VA examination, the Veteran reported he experiences flare-ups of his left hip, manifested by pain and stiffness. He also stated he was unable to do extended standing or walking. On physical examination, range of motion studies revealed left hip flexion to 100 degrees, extension to 10 degrees, abduction to 20 degrees, adduction to 10 degrees, external rotation to 30 degrees, and internal rotation to 20 degrees. Adduction was limited such that the Veteran cannot cross his legs. Pain was noted on range of motion testing on flexion. There was evidence of pain with weight bearing. There was no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue, and no objective evidence of crepitus. Repetitive range of motion testing revealed no change in range of motion findings, although there was evidence of functional impairment due to pain, fatigue, and lack of endurance, although such could not be quantified in terms of loss of range of motion. Muscle strength testing of the left hip was normal (5/5). There was no evidence of ankylosis, or malunion or nonunion of femur or flail hip joint. The Veteran used a cane constantly for ambulation. 

Based on the evidence above, the Board finds no distinct period of time during the appeal period when symptoms of the Veteran's left hip disability were of (or approximated) such nature and gravity as to warrant a rating in excess of 10 percent. Flexion has been no less than 90 degrees, and extension has been no less than 10 degrees (even with consideration of range of motion with pain and after repetitive range of motion testing), and there is no evidence of ankylosis, hip flail joint, or malunion or nonunion of the femur. In addition, the evidence does not show limitation of abduction beyond 10 degrees. The Board notes that on September 2015 VA examination, it was found that adduction was limited such that the Veteran could not cross his legs, but such is consistent with the currently assigned 10 percent rating, under Diagnostic Code 5253. In addition, there is no evidence of degenerative arthritis substantiated by x-ray findings, as such was specifically noted not to have been found throughout the appeal period. 

Consideration has been given to whether additional functional loss exists that is not contemplated by the currently assigned rating. See 38 C.F.R. §§ 4.40, 4.45, 4.59; see also DeLuca v. Brown, 8 Vet. App. 202 (1995). However, although repetitive range of motion testing on September 2015 examination revealed functional impairment due to pain, fatigue, and lack of endurance, the examiner noted there was no resulting reduced range of motion. In addition, the February 2012 examiner found no change in range of motion after repetitive range of motion testing. The Veteran has reported experiencing flare-ups and other symptomatology. However, as noted above, there is no evidence of additional functional loss not contemplated by the currently assigned rating, and accordingly, an increased rating on the basis of functional loss is not warranted. 

Lumbosacral Spine Prior to and Since February 9, 2012

The Veteran's lumbosacral spine disability is rated 10 percent prior to February 9, 2012, and 20 percent since that date, pursuant to Diagnostic Code 5237 (for lumbosacral or cervical strain). 

Under the General Rating Formula for Diseases and Injuries of the Spine (General Rating Formula), with or without symptoms such as pain, stiffness or aching in the area of the spine affected by residuals of injury or disease, the following ratings will apply: A 10 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; when the combined range of motion of the thoracolumbar spine is greater than 120 degrees but not greater than 235 degrees; or, when there is muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour. A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. 

There are several notes following the General Rating Formula criteria, which provide: (1) Associated objective neurological abnormalities are to be rated separately under an appropriate diagnostic code. (2) For purposes of VA compensation, normal forward flexion of the thoracolumbar spine is 0 to 90 degrees, extension is 0 to 30 degrees, left and right lateral flexion is 0 to 30 degrees, and left and right lateral rotation is 0 to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. (3) In exceptional cases, an examiner may state that, because of age, range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in the regulation. 38 C.F.R. § 4.71a. 

The Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes provides that incapacitating episodes having a total duration of at least 1 week but less than 2 weeks during the past 12 months warrants a 10 percent rating. A 20 percent rating is warranted when there are incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. A 40 percent rating is warranted when there are incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. A 60 percent rating is warranted when there are incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 

An "incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. 38 C.F.R. § 4.71a, Note 1 following the Formula for Rating Based on Incapacitating Episodes. 

The Veteran seeks a higher rating for his service-connected lumbosacral spine disability prior to and since February 9, 2012. The instant claim for an increased rating was filed on December 14, 2007. 

In his claim for an increased rating, the Veteran reported he experiences chronic pain, swelling, and stiffness, along with limited range of motion, worsened with change in weather. 

On February 2009 VA examination, the Veteran complained of daily chronic low back pain, radiating to both legs. He indicated his symptoms were worse with prolonged sitting and standing, and prolonged periods of driving. He denied the use of assistive devices. The Veteran related he suffered four incapacitating episodes wherein a doctor told him to remain out of work in the past year, and a total of six incapacitating episodes where he would not go to work and be out for one day. On physical examination, the Veteran had a normal gait. Range of motion studies revealed flexion to 80 degrees (with discomfort at 80 degrees, and pain at about 60 or 70 degrees), extension to 10 degrees, lateral flexion to 28 degrees on the right and to 22 degrees on the left, and bilateral rotation to 35 degrees. Repetitive range of motion testing caused increased pain and a 10 degree loss of range of motion on flexion (i.e., forward flexion to 70 degrees). The musculature of the back was normal without spasm. The diagnosis was chronic back strain, narrowing L5/S1 inner space. 

On February 9, 2012 VA examination, the Veteran complained of continuous right low back pain, and low back spasms. He indicated that pain medication does not relieve his pain. He reported flare-ups up to four times per week, lasting less than one day, and precipitated by walking, alleviated by laying down on a hard surface and laying down on the floor. On physical examination, the Veteran had an abnormal gait. Range of motion studies revealed forward flexion to 60 degrees, extension to 10 degrees, bilateral lateral flexion to 20 degrees, right lateral rotation to 20 degrees, and left lateral rotation to 30 degrees or greater. There was no change in range of motion after repetitive range of motion testing. There was positive guarding or muscle spasm of the thoracolumbar spine. Muscle strength testing was normal (5/5). Reflex and sensory examination of the lower extremities was normal. There were positive signs or symptoms of radiculopathy. It was noted that there were no incapacitating episodes over the past 12 months. The examiner noted that the Veteran constantly used a cane for ambulation. The diagnosis was degenerative disc disease of the lumbosacral spine. 

Post-service VA treatment records show that the Veteran was measured for a back brace in November 2009. They also note the Veteran's complaint of lumbar spine pain, aggravated by activities involving lifting, bending, twisting, reaching and looking up. He indicated there was some relief with rest, and with stretching/exercise. See, e.g., December 2013, April 2014 reports. 

On September 2015 VA examination, the Veteran reported experiencing flare-ups of his back symptoms manifested by pain in the lower back and both sides with pain going down to the legs. He indicated he was unable to lift heavy objects or do extended walking. On physical examination, range of motion studies revealed forward flexion to 60 degrees, extension to 20 degrees, bilateral lateral flexion to 20 degrees, and bilateral rotation to 20 degrees. There was evidence pain in all ranges of motion, and pain with weight bearing. There was no objective evidence of localized tenderness or pain on palpation of the joint or associated soft tissue of the thoracolumbar spine. There was also no evidence of guarding or muscle spasm of the thoracolumbar spine. There was no evidence of ankylosis of the spine. Repetitive range of motion testing revealed no change in range of motion findings, although there was evidence of functional impairment due to pain, fatigue, and lack of endurance, although such could not be quantified in terms of loss of range of motion. Muscle strength testing was normal (5/5). Reflex and sensory examination was also normal. Straight leg testing was positive on the right and left, and there were signs and symptoms due to radiculopathy, noted to be moderate in severity of the sciatic nerve. There were no other neurologic abnormalities or findings related to the thoracolumbar spine. The examiner noted that the Veteran did not intervertebral disc syndrome of the thoracolumbar spine. It was noted the Veteran constantly used a cane for ambulation. 

Based on the evidence above, the Board finds no distinct period of time prior to February 9, 2012 when symptoms of the Veteran's lumbosacral spine disability were of (or approximated) such nature and gravity as to warrant a rating in excess of 10 percent. Thoracolumbar forward flexion was no less than 70 degrees, and extension was no less than 10 degrees (even with consideration of range of motion with pain and after repetitive range of motion testing), and there is no evidence of ankylosis. In addition, there was no evidence of muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. While the Veteran indicated on February 2009 examination that he had suffered incapacitating episodes having a total duration of four days during the past year, such is also of no benefit to the Veteran as the next higher (20 percent) rating requires incapacitating episodes having a total duration of at least 2 weeks, which the Veteran fails to satisfy. 

For the period since February 9, 2012, the Board also fails to find a distinct period of time when the symptoms of the Veteran's lumbosacral spine disability were of (or approximated) the criteria for a rating in excess of 20 percent. Thoracolumbar forward flexion was no less than 60 degrees, and extension was no less than 10 degrees (even with consideration of range of motion with pain and after repetitive range of motion testing), and there is no evidence of ankylosis. In addition, there are no reports or evidence of incapacitating episodes during the period since February 9, 2012, as such was denied and/or not found on February 9, 2012 and September 2015 examination. 

VA regulations also provide that in addition to orthopedic considerations, any associated objective neurologic abnormalities including, but not limited to, bowel or bladder impairment, should be evaluated separately, under an appropriate diagnostic code. The Board finds there is no evidence of any additional neurologic disability related to the Veteran's service-connected lumbosacral spine disability during the appeal period (other than currently service-connected radiculopathy of the right and left lower extremities, the award of which the Veteran has not expressed disagreement with). See October 2015 rating decision (granting service connection for radiculopathy of the left lower extremity, and granting an increased rating for radiculopathy of the right lower extremity). 

Consideration has been given to whether additional functional loss exists that is not contemplated by the currently assigned rating. See 38 C.F.R. §§ 4.40, 4.45, 4.59; see also DeLuca v. Brown, 8 Vet. App. 202 (1995). However, although repetitive range of motion testing on September 2015 examination revealed functional impairment due to pain, fatigue, and lack of endurance, the examiner noted there was no resulting reduced range of motion. In addition, the February 2012 examiner found no change in range of motion after repetitive range of motion testing. And on February 2009 examination, repetitive range of motion testing caused increased pain and a 10 degree loss of range of motion on flexion (i.e., forward flexion to 70 degrees), but not sufficient to be consistent with, or approximate, the criteria for an increased rating. The Veteran has reported experiencing flare-ups and other symptomatology. However, as noted above, there is no evidence of additional functional loss not contemplated by the currently assigned rating, and accordingly, an increased rating on the basis of functional loss is not warranted. 

Finally, in exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

In this case, the medical evidence fails to show anything unique or unusual about the Veteran's left hip or lumbosacral spine disabilities. While the disabilities undoubtedly cause some impairment, no symptoms have been described that would render the schedular criteria inadequate. The Board finds that his left hip and lumbosacral spine disabilities do not interfere with his beyond that contemplated by the currently assigned rating. The Board also notes that the schedular criteria contemplate increased ratings for various hip and spine symptomatology and disabilities, including separate ratings for associated neurologic abnormalities, which symptomatology and disabilities have not been found (other than the currently service-connected right and left lower extremity radiculopathy). 

In addition, for all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell, 25 Vet. App. at 37. For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement, excess fatigability, pain on movement, disturbance of locomotion, and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. Thus, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss. Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability. 


ORDER

A rating in excess of 10 percent for evulsion fracture of the left hip is denied. 

Prior to February 9, 2012, a rating in excess of 10 percent for degenerative disc disease of the lumbosacral spine with lumbar strain is denied. 

Since February 9, 2012, a rating in excess of 20 percent for degenerative disc disease of the lumbosacral spine with lumbar strain is denied. 


REMAND

After careful review of the record, the Board finds that the Veteran's claims of service connection for a left ankle, lung, left knee, right knee, right shoulder, and a right hip disability, must be remanded for further development. 

The Veteran contends that his left knee, right knee, right shoulder, and right hip were injured during service. See December 2007 claim. In addition, the post-service evidence of record reflects diagnoses of bilateral knee chondromalacia and degenerative changes, and right acromioclavicular joint degenerative joint disease. See, e.g., May 2006 private treatment record (diagnosing bilateral chondromalacia); August 2006 VA MRI (diagnosing left knee osteoarthritis); July 2009 VA MRI (diagnosing right knee tricompartmental degenerative changes); April 2014 VA x-rays (diagnosing right acromioclavicular degenerative joint disease). In light of the evidence presented, the Board finds that the "low threshold" requirement under McLendon v. Nicholson, 20 Vet. App. 79 (2006) is met, and the Veteran should be afforded a VA examination to determine the nature of his left knee, right knee, right shoulder, and right hip disabilities, and to obtain an opinion as to their possible relationship to service. 

Additionally, since the service connection claims have not yet been fully considered under 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317, and the Veteran's active service included service in the Southwest Asia theater of operations, the RO should provide the Veteran with appropriate notice of the evidence needed to establish service connection for a left ankle disability, a lung disability, a left knee disability, a right knee disability, a right shoulder disability, and a right hip disability, pursuant to these provisions. 

Additionally, because the Veteran's TDIU claim is inextricably intertwined with the claims remaining on appeal, appellate consideration of entitlement to a TDIU rating is deferred pending resolution of the remaining claims on appeal. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991); see also Tyrues v. Shinseki, 23 Vet. App. 166, 177 (2009) (en banc) (explaining that claims are inextricably intertwined where the adjudication of one claim could have a significant impact on the adjudication of another claim). The Board also notes that in May 2004, the Veteran appears to raise the matter of entitlement to service connection for a bilateral elbow disability. This issue is inextricably intertwined with the TDIU claim as well. 

Finally, the Veteran's claims file should be updated to include relevant VA treatment records. 38 U.S.C.A. § 5103A(c); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim); Sullivan v. McDonald, No. 2015-7076, 2016 WL 877961, at *5 (Fed. Cir. Mar. 8, 2016) (holding that 38 C.F.R. § 3.159(c)(3) expanded VA's duty to assist to include obtaining VA medical records without consideration of their relevance). 

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran adequate notice under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) that includes the criteria required for a claim asserted based on Persian Gulf War service under 38 U.S.C.A. § 1117 and 38 C.F.R. § 3.317 regarding his claims for service connection for a left ankle disability, a lung disability, a left knee disability, a right knee disability, a right shoulder disability, and a right hip disability. 

Also provide the Veteran adequate notice under 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) that includes an explanation as to the information or evidence needed to establish a claim for service connection for a bilateral elbow disability. 

2. The RO should associate with the claims file updated VA treatment records since February 2015 pertaining to the Veteran's left knee, left ankle, lung, right knee, right shoulder, and right hip disability, as well as any identified outstanding private treatment records that have not been associated with the claims file. 

3. Notify the Veteran he may submit statements from himself and others who have first-hand knowledge of the nature and extent of his in-service and post-service left and right knee, left ankle, lung, right shoulder, right hip, and left and right elbow symptoms, as well as any relationship between his left and right knee, left ankle, lung, right shoulder, right hip, and left and right elbow and his service. 

He should also be invited to submit lay or medical evidence addressing the nature, symptoms, and severity of his service-connected disabilities and the impact of his conditions on his ability to work. 

The Veteran should be given a reasonable period of time to respond. 

4. After the above development, schedule the Veteran for an examination(s) to determine the nature and etiology of his left knee, right knee, left ankle, lung, right shoulder, and right hip disability. The Veteran's claims file should be provided to and reviewed by the examiner. All indicated studies should be performed. 

Based on review of the record, and interview of the Veteran, the examiner should provide an opinion that responds to the following: 

(a) Please state whether the symptoms of the Veteran's left ankle, left knee, right knee, lung, right shoulder, and right hip are attributable to a known clinical diagnosis. If the Veteran does not now have, but previously had such condition, when did that condition resolve? 
(b) Is the Veteran's disability pattern consistent with: (1) a diagnosable but medically unexplained chronic multisymptom illness of unknown etiology, (2) a diagnosable chronic multisymptom illness with a partially explained etiology, or (3) a disease with a clear and specific etiology and diagnosis? 
(c) If, after examining the Veteran and reviewing the claims file, the examiner determines that the Veteran's disability pattern is either (2) a diagnosable chronic multi-symptom illness with a partially explained etiology, or (3) a disease with a clear and specific etiology and diagnosis, then please provide an expert opinion as to whether it is related to presumed environmental exposures experienced by the Veteran during service in Southwest Asia. 
(d) Is it at least as likely as not that any diagnosed disorder had its onset directly during the Veteran's service or is otherwise causally related to any event or circumstance of his service, including environmental exposures during service in Southwest Asia during the Persian Gulf War? 
(e) If not directly related to service on the basis of questions (b)-(d), is any medical condition proximately due to, the result of, or caused by any service-connected disability(ies) (i.e., evulsion fracture of the left hip, degenerative disc disease of the lumbosacral spine with lumbar strain (and associated right and left lower extremity radiculopathy), left shoulder impingement syndrome, post-traumatic stress headaches, bilateral tinea pedis and callouses, right inguinal hernia, hemorrhoids, irritable bowel syndrome, obstructive sleep apnea)? 
(f) If not caused by another medical condition, has any disorder been aggravated (made permanently worse or increased in severity) by any service-connected disability(ies) (i.e., evulsion fracture of the left hip, degenerative disc disease of the lumbosacral spine with lumbar strain (and associated right and left lower extremity radiculopathy), left shoulder impingement syndrome, post-traumatic stress headaches, bilateral tinea pedis and callouses, right inguinal hernia, hemorrhoids, irritable bowel syndrome, obstructive sleep apnea)? If yes, was that increase in severity due to the natural progress of the disease? 

In answering all questions (a) through (f), please articulate the reasons underpinning all conclusions reached. Specifically, please identify what facts and information, whether found in the record or outside the record, support any opinion provided, and, explain how that evidence justifies the opinion reached. If the examiner is unable to provide a medical opinion, then he or she should provide a statement as to whether there is any additional evidence that could enable an opinion to be provided, or whether the inability to provide the opinion is based on the limits of medical knowledge. 

5. The RO should then readjudicate the Veteran's claims, and consider whether service connection is warranted for the left or right elbow, and whether entitlement to TDIU is warranted. If the benefits sought on appeal are not granted in full, the Veteran should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2015).




______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs